RUSSELL v. CROWLEY.

(Supreme Court, Appellate Division, Third Department. November 29, 1911.)

1. JURY (§ 28\*)—WAIVER OF RIGHT—REQUEST FOR DIRECTION OF VERDICT.

    Where defendant in an action on a lease asked for a directed verdict upon his counterclaims, and excepted to the action of the court in reserving one of them for its own decision, but made no request to go to the jury on such counterclaim, the trial court might properly decide the question raised thereby.

    [Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 176–196; Dec. Dig. § 28.\*]

2. APPEAL AND ERROR (§ 849\*)—REVIEW ON APPEAL FROM JUDGMENT ON MOTION FOR A DIRECTED VERDICT.

    Where defendant, at the close of the evidence in an action upon a lease. asked for a directed verdict upon his counterclaims, and the court submitted one of the counterclaims to the jury, and reserved for his own decision the question raised by the other, to which action defendant excepted, but made no request to go to the jury upon the counterclaim reserved, the trial court might properly decide such question, and its decision could only be reviewed as a decision of the court upon a question of fact and law.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3303–3365; Dec. Dig. § 849.\*]

3. VENDOR AND PURCHASER (§ 79\*)—CONTRACTS—CONSTRUCTION.

    In a contract for the sale of land, the vendor covenanted to sell and convey certain described premises in fee simple, the purchaser to pay a fixed sum as soon as the vendor could get title, and on the payment of such sum and as soon as the vendor could get title she covenanted to deliver a deed and possession of the premises. *Held*, that the provision to convey as soon as title could be obtained simply fixed a time for per-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

formance, and did not amount to a condition that the contract should not be obligatory in case title could not be perfected.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 127–131; Dec. Dig. § 79.*]

4. VENDOR AND PURCHASER (§ 170*)—BREACH—PAYMENT OF PURCHASE MONEY —PAYMENT OF TENDER.

Where the vendor of land, to be conveyed when title should be obtained, was at no time in a position where she could perform, and a partition suit was brought against the property described, and a lis pendens filed, making the purchaser a defendant, tender by the purchaser, asserting breach by way of counterclaim, was not required.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 344–348; Dec. Dig. § 170.*]

5. LANDLORD AND TENANT (§ 223*)—COUNTERCLAIM.

In an action to recover the balance due on a lease, defendant showed a breach of the plaintiff's contract to convey land to him, for which liquidated damages in the sum of $200 had been provided. On partition suit, instituted by third persons, defendant had purchased the land for $80 more than the price fixed by the contract, and had paid $38 as his share of costs. *Held*, that defendant was entitled to counterclaim for the excess paid over the contract price and for his costs.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 885–893; Dec. Dig. § 223.*]

Houghton and Betts, JJ., dissenting.

Appeal from Franklin County Court.

Action by Sarah A. Russell against Michael J. Crowley. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

George J. Moore, for appellant.
Earl W. Scripter, for respondent.

SMITH, P. J. This action is brought to recover the balance due upon a lease executed between the plaintiff and defendant. The cause of action is admitted. The defendant, however, has asserted two counterclaims, both of which have been disallowed. As to one of those counterclaims he makes no question upon this appeal, the jury having decided against him. The other counterclaim was taken from the jury by the court, and was decided adverse to his contention, and this decision of the County Court presents the sole question here for review.

[1, 2] At the close of the evidence the defendant asked for a directed verdict in his favor upon the counterclaim. The trial judge submitted the question upon one of the counterclaims, and reserved for his own decision the question raised by the other counterclaim. To this an exception was taken. But no request was made to go to the jury upon the question reserved by the trial court, and defendant having made a motion for a directed verdict, and not having requested to go to the jury upon the question reserved, the trial court might properly decide that question, and his decision can only be reviewed as the decision of a court upon a question of fact and law submitted to him by consent.

This action was begun before a justice of the peace in the town of Ft. Covington. He rendered a judgment in favor of the plaintiff for $49.46, and $3.26 costs. The defendant thereupon applied to the County Court for a new trial. In County Court the plaintiff recovered a verdict for $45, which, with the costs, make the judgment from which the appeal is taken.

The lease upon which plaintiff sues was made in February, 1907, for the term of one year from April 1, 1907, for the sum of $70. Upon that $25 was paid, leaving the sum of $45 due thereon, for which plaintiff has recovered judgment. At the time of the execution of the lease there was also executed between the parties a land contract. Inasmuch as the question here for determination depends upon the construction of that contract, it will be given in full:

### "Article of Agreement,

"Made and entered into this 28th day of February, in the year of our Lord one thousand nine hundred and seven, between Sarah A. Russell, of the town of Ft. Covington, N. Y., of the first part, and Michael J. Crowley, of Bombay, N. Y., of the second part, witnesseth: That the said party of first part, in consideration of the covenants and agreements hereinafter contained, to be performed on the part of the party of the second part, does hereby covenant and agree to and with the said party of the second part to sell, and convey to him in fee simple, by a good quitclaim deed of conveyance, free and clear from all liens, rights of dower, or other incumbrances (unless hereinafter specified), all that piece or parcel of land, situate in the town of Bombay, county of Franklin, and state of New York, briefly described as follows:

"Situate in said town of Bombay, Franklin county, state of New York, and situate on the Helena road south of St. Regis river and about one mile west of Hogansburg, and known as the Joseph Lamping farm, containing 52 acres of land more or less.

"The party of the second part covenants and agrees to purchase of the said party of the first part the premises above described, and to pay and secure to be paid therefor the sum of two thousand dollars in the manner following; that is to say, to be due and payable as fast and as quick as she can get title of same from the Joseph Lamping heirs, she being one of said heirs.

"On payment of the sums to be so paid soon as she can get title from the heirs, the party of the first part covenants on that day to deliver to the party of the second part the deed aforesaid.

"The said deed shall be delivered and the money paid at the office of W. G. Cushman, in the town of Ft. Covington, N. Y. The party of the first part covenants and agrees to receive genuine current funds for the payments hereinbefore expressed.

"The party of the first part covenants and agrees, that on the ———— day, and upon the performance by the party of the second part of the covenants herein contained on his part to be performed, and soon as she can obtain deed from other heirs, she will deliver to the party of the second part quiet and peaceable possession of said premises, in as good condition as they now are, natural wear excepted.

"The party of the second part agrees to pay all taxes and assessments that shall be paid or assessed on said premises during the term he shall have possession under this agreement. It is further covenanted and agreed that in case the party of the second part has possession of said premises before the execution and delivery of said deed, and in case of failure on his part to perform any of the covenants herein contained, he will yield and deliver to the party of the first part quiet and peaceable possession of said premises; that the party of the first part may immediately after such failure re-enter and take possession of the same, without any previous notice to quit, in reference to any legal proceedings to recover possession thereof.

"It is mutually covenanted and agreed that in case either party fails to

perform the covenants herein agreed to be performed by such party the party
so failing shall and will pay to the other the sum of two hundred dollars,
which sum is hereby fixed and agreed upon as the liquidated damages for
such failure, and that the same shall in no event be considered a penalty.

"In witness whereof, the parties have hereunto set their hands and seals
the day and year first above written.

"Sealed and delivered in the presence of      Sarah A. Russell.    [L. S.]

"M. J. Crowley.      [L. S.]"

Under that agreement, about the 1st of June, the plaintiff secured
one of the heirs to deed to the defendant a one-tenth share in the
property, for which he paid the sum of $200. Plaintiff made no fur-
ther attempt to procure the shares of the other parties at any time.
In September, seven months after the making of this agreement, an
action for partition was brought by an owner of another share, which
resulted in a sale in 1909, upon which sale defendant purchased the
property for $2,080. This action was brought about June, 1909, be-
fore the sale in partition. The counterclaim upon which the question
here arises was for the recovery of the $200 stipulated damages in
the contract between plaintiff and defendant.

[3] I am unable to construe this contract as has the learned county
judge. The contract contains a specific covenant to sell to the defend-
ant for $2,000. The provision to convey as soon as title can be ob-
tained fixes simply the time for the performance, and does not con-
dition the covenant to convey itself. Plaintiff was bound to use rea-
sonable diligence to procure the conveyance from the other heirs.
This she has clearly failed to do. She could have purchased at the
partition sale, and then offered a conveyance to the defendant; but
this she failed to do. [4] But there was a default before the parti-
tion sale. She made no attempt to procure title from the other heirs.
She was at no time in a position when she could perform, had de-
fendant tendered the money. For this reason a tender by defendant
was waived. In 28 Am. & Eng. Encyc. of Law, p. 9, the text reads:

"Neither need the purchase money be tendered by the vendee when the
vendor is unable to convey the land."

In Davis v. Van Wyck, 64 Hun, 186, 18 N. Y. Supp. 885, the ven-
dor had parted with the land, and this was held to excuse a tender,
because the vendor had put it out of his power to convey. Plaintiff
is in no better position to convey when she has no title and has made
no endeavor to get one. With greater reason, therefore, could he
insist that tender was excused after the partition action had been com-
menced in the fall of 1907, a lis pendens filed, and he had been brought
into court as a defendant. At the trial in justice's court plaintiff tes-
tified that she could not carry out the provisions of the contract. Evi-
dence of the sale in partition was given in County Court by defendant
without objection, and defendant was denied relief only on the ground
that plaintiff was not obliged to procure title from the other heirs, and
that her obligation only began if she should so procure title. Differ-
ing as we do from the trial judge in his construction of the contract,
we find that plaintiff is clearly liable for a breach of her contract,
and primarily liable for the full $200, the stipulated damages.

[5] But these damages, though stipulated, the defendant himself has

lessened by purchasing the property for $2,080. The costs of the action amounted to $383.27, of which the defendant was required to pay one-tenth, or $38.32. The actual damage to the defendant, therefore, is made up of the $80 he paid in excess of the price which he was to pay to the plaintiff and the $38.32, one-tenth of the costs of the action. To the extent, therefore, of $118.32, his counterclaim was clearly right, and should have been allowed.

The judgment and order should therefore be reversed on law and facts, and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed on law and facts, and new trial granted, with costs to appellant to abide event. All concur, except HOUGHTON, J., dissenting in opinion, in which BETTS, J., concurs.

HOUGHTON, J. (dissenting). The contract to convey is ambiguous, and I think the interpretation given to it by the learned county judge, was correct. It is true that in one part of the contract the plaintiff agreed to convey, importing a conveyance to herself and a reconveyance to the defendant; but other portions of the contract, and the interpretation given to it by the parties themselves, show that what the plaintiff was to do was to obtain conveyances to the defendant from the heirs of Joseph Lamping, if she could, and as fast as she could. The covenant on the part of the defendant was to pay for the whole property the sum of $2,000, and "in the manner following; that is to say, to be due and payable as fast and as quick as she [the plaintiff] can get title of the same from the Joseph Lamping heirs, she being one of said heirs." Then the following language is used:

"On payment of the *sums* to be so paid as soon as she can get title from the heirs, the party of the first part [plaintiff] covenants on that day to deliver to the party of the second part the deed aforesaid."

The same language is used in another part of the instrument, with respect to the plaintiff obtaining title as soon as she could. Both the plaintiff and the defendant assumed that the plaintiff was carrying out the contract by producing her sister to the defendant, who was willing to convey for the sum of $200; the defendant taking her deed and paying her that sum.

The plaintiff testified that what she supposed she was agreeing to was to obtain conveyances by the heirs to the defendant, if she could. The language of the contract is, "On payment of the sums to be so paid," using the plural; and the defendant himself testifies that he told the plaintiff that he wanted the other *titles* as soon as she could get them. The defendant also testified that Mr. Cushman, the draftsman, communicated with him, and asked him if he would take conveyance of the plaintiff's share, and he said that, unless he got all the shares, her share would not do him any good.

The lease and the contract to convey were drawn on the same day, and together made practically one transaction. The lease was for the term of one year, but contained the further clause:

"In the event that the party of the second part does not buy and get title to said farm within the next year, then and in that event he has the privilege of renting said place two years longer at the same terms of rent."

The use of the term "buy and get title," in the connection in which it is employed, indicates that the defendant expected to purchase from time to time such shares as he could until he got complete title, and not that the plaintiff was to get title in herself and then convey to him. Besides, the defendant expected that it would take a long time to gather the title together, as indicated, not only by the language of the contract to convey, but by the clause in the lease above quoted. A reasonable time, therefore, under all the circumstances, was not a few weeks, or even a few months. Certainly it cannot be claimed that time was the essence of the contract. Before that reasonable time had expired, and on the 1st day of September, 1907, a partition action was brought, without any procurement of plaintiff, and the defendant seems to have assumed that it was useless to attempt to obtain conveyances from any of the heirs thereafter.

But, if the contract to convey is to be interpreted as indicated by the prevailing opinion, still I think the defendant had no cause of action on his counterclaim, for the reason that he had never put the plaintiff in default by a proper tender and demand that she make conveyance to him.

The summons in justice's court was issued on May, 7, 1909, and defendant filed his answer setting up his counterclaim on May 18th. Various adjournments were had, and judgment was rendered on June 26th. The sale under the partition action occurred in July or August following. The defendant testified that he never had any talk with the plaintiff about the title of the other heirs or herself after July or August, 1907, and then he only told her that the money for her share was ready any day she wanted it. He further testified that he never demanded a conveyance of the plaintiff's share, other than telling her he was ready for it, and wanted it any time, and that she never refused to convey it to him. Defendant had, therefore, never tendered the purchase price and demanded a deed from the plaintiff before May 18, 1909, when he set up his counterclaim for liquidated damages. If the plaintiff agreed by her contract to convey to the defendant at all hazards, payment of the money to her and delivery of the deed were dependent and concurrent acts.

In Higgins v. Eagleton, 155 N. Y. 466, 473, 50 N. E. 287, 289, it is said:

"It is a well-settled rule that, to entitle a party to recover damages for the breach of an executory contract of this character [conveyance of land], he must show a tender of performance upon his part and a demand of performance by the other party. It must be established in some way that the other party is in default; so that the performance or tender of performance has been waived."

In order that the defendant might have the right to enforce his claim for liquidated damages under the contract, it is incumbent upon him, therefore, to show that he had made a tender of the money and demanded a deed, and that the plaintiff had refused or neglected to

furnish it, unless the plaintiff had absolutely refused to convey, or put it out of her power so to do. She never refused to convey, and she never put it out of her power to make conveyance. While it might have been embarrassing to obtain the title of the various heirs after the partition action had been instituted, if the defendant had done what he was obliged to do, to wit, demanded performance and made a tender of the money, it cannot be assumed that she would have been unable to obtain the conveyances and terminate the partition action.

Nor can it be said that the plaintiff so neglected to obtain title as to render her liable. Whether there was such neglect must be judged by all the circumstances. Time was not important. A reasonable time had not expired when the partition action was begun. After that action was begun, the defendant never spoke to the plaintiff on the subject, as he himself testified. I think it was incumbent upon the defendant, under the peculiar circumstances disclosed, to at least request the plaintiff to obtain conveyances from the heirs during the two years in which the partition action was pending, before she should be charged with actionable negligence.

For these reasons, I think the judgment should be affirmed.